# Henry Cline and Robert Francis, *vs.* William D. Miller.

A contractor mortgaged the lots, on which he was about to erect certain houses, to defendant, to secure advances for the purchase of materials for their erection, to be made by the latter in instalments as the houses progressed to completion. He then gave an order upon defendant, in favor of plaintiffs, for bricks to be furnished by them, payable out of these advances in four instalments, the third of which was payable when the houses were plastered, and the balance when they were *completed by the contractor.* Defendant accepted this order on condition, that when the houses were plastered he was to give his note for the balance then due the plaintiffs, at six months, "*for their accommodation.*" The bricks were furnished to the contractor upon the basis of this order and acceptance. The two first instalments were duly paid, and when the houses were plastered, the instalment then due, instead of being paid by a note at six months, was paid in cash, deducting five *per cent.* Defendant then for the balance tendered his note at six months, *provided* plaintiffs would sign a receipt that it was given for their *accommodation,* and that they were to pay it *unless the houses were completed by the contractor.* This they refused to do and sued upon the *acceptance.* The contractor never did complete the houses. HELD:

That by this acceptance the note to be given was a note for the *accommodation* of the plaintiffs, in the legal and technical sense of that word, to become the *real* note of defendant only in case the houses were completed by the contractor, and this contingency never having occurred, the plaintiffs could not recover.

A payee may refuse a conditional or qualified acceptance, yet if he *takes* such an one when offered, he can only claim payment according to the condition or qualification.

As between the original parties to a bill or note, the total or *partial* want or failure of consideration may be relied on as a defence, and a *partial* failure avoids the note only *pro tanto.*

Cline & Francis, *vs.* Miller.

Where this court can see from the admitted facts of the case that the appellants have no cause of action, a *procedendo* will not be ordered, though the prayer excepted to may be wrong.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit,* by the appellants against the appellee, on an acceptance of defendant on a draft drawn by one Andrew Birmingham in favor of plaintiffs. The declaration contains the common counts only. Plea, *non assumpsit.*

*Exception.* The facts of the case are fully stated in the opinion of this court. After the evidence was closed, the defendant asked the court to instruct the jury, that by the terms of the acceptance offered in evidence, defendant was only bound when the houses, referred to in the order accepted, were plastered, to give to plaintiffs his or his firm's note, at six months, for the balance then due the plaintiffs, not exceeding the amount of bricks specified in the order, as an accommodation note to be provided for by the plaintiffs at maturity, unless, in the mean time, whilst said note was running to maturity, the said houses be completed by said Birmingham, in which event said accommodation note was to become a real one; and if the jury shall find from the evidence that he tendered such accommodation note to the plaintiffs, or either of them, on condition they would sign the receipt given in evidence, and that they declined receiving the same on that condition, and that the houses were not completed by Birmingham before the institution of this suit, then the plaintiffs are not entitled to recover upon any of the counts in their declaration. This prayer the court, (FRICK, J.,) granted, and the plaintiffs excepted and appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*Orville Horwitz* for the appellants, argued:

1st. That the words, "for their accommodation," in the acceptance, mean for the *convenience of all parties,* including Miller, and not simply that Miller was to give an *accommodation* note, in the legal, technical sense of that term. The cir-

cumstances of the case fully justify this construction. The original order was to pay $250 in cash when the houses were plastered. This condition was varied by the *acceptance*, and instead of this *cash payment*, he pays by a note at six months. This was for Miller's accommodation and was the consideration upon which he was to give a *note for value*, and not an *accommodation* note.

2nd. The fact that when the houses were plastered Miller paid Cline & Francis, instead of $250 in cash, the sum of $237.50, equivalent to a note at six months, at a discount of five per cent., clearly shows that Miller himself construed these words of the acceptance to mean a *note for value* for the accommodation of *all parties*, and not simply an *accommodation note*.

3rd. The materials furnished by Cline & Francis were bricks, which went into the houses to secure *Miller* for his advances, and this enhancement of his security was the *consideration* for his giving his note. It cannot be said, therefore, that there was no *consideration* for this note, for both the fact that the materials furnished went into the houses and thus enhanced Miller's security for the advances and the extension of six months on the *cash payment* when the houses were plastered, furnished ample consideration for a *note for value*.

4th. Again, this was an order drawn upon a *fund* in the hands of *Miller*. He had then in his hands, due Birmingham, more than $3000 when this order was drawn and accepted. His obligation to pay it is, therefore, upon this ground alone, clear. Again, the acceptance was good for the amount due when the houses were plastered, and being good for part, is good for the whole. *Byles on Bills*, 224, 226.

*John H. Ing* and *Thomas W. Hall, Jr.*, for the appellee, argued:

1st. That the words, "for their accommodation," in this acceptance, have a well defined and settled meaning when used with reference to bills of exchange and promissory notes, in accordance with which established signification in commercial usage they must be taken to have been used by Miller, and to have been understood by the parties.

Cline & Francis, *vs.* Miller.

2nd. That an accommodation note is one drawn or endorsed, without consideration, by the accommodation drawer or endorser, to enable the party accommodated to raise money on it or otherwise to make use of it. *Byles on Bills,* 100, 323. In this case Miller had contracted with Birmingham to advance on certain houses certain sums, at stated periods, in the progress of the buildings, the last advance to be made when the houses "were fully completed and finished." His liability to make these advances was therefore dependent and conditional. The houses never having been completed by Birmingham Miller was released from all liability to make the fourth advance, which, under his contract, was payable only in the event and at the date of their completion. The order accepted by Miller was to pay the appellants certain sums in instalments "*out of the above named advances.*" If, therefore, in consequence of the non-completion of the houses no liability of Miller ever accrued to pay the last advance, neither was there any liability on his part to pay the appellants the balance claimed in this action, payment thereof, *by the terms of the order,* being expressly made dependent on the same contingency as that of the advance out of which it was to be made. Any note therefore drawn by Miller in favor of the appellants, before the completion of the houses, would have been wholly without consideration on his part, and as between the parties an *accommodation* note. A *fortiori* must such be the case where it was expressly stipulated that the note so to be given to the appellants should be "*for their accommodation.*" The materials furnished do not constitute any consideration as between the parties to this suit so as to make a note, given by Miller on account of a balance due for such materials, for that reason a note for value and not an accommodation note, because in fact the materials were furnished, not to Miller but to Birmingham, and the liability of the former to pay for them grows out of the fact of his acceptance of Birmingham's order, and must be expressly limited by the terms and conditions of that order and acceptance.

3rd. That the obvious intention of Miller, to be inferred, as well from all the circumstances of the case as the use of the

words, "for their accommodation," was to accommodate the appellants; that is by substituting for a future and uncertain cash payment, contingent on the future completion of the houses by Birmingham, a present loan of the name and credit of Miller, to enable the appellants, for their accommodation, to raise money thereon, necessarily with the implied understanding, that if the houses never were finished the note should be provided for at maturity by the parties accommodated. The receipt demanded by Miller and the prayer granted by the court below were therefore equally justified by a proper view of the rights of the parties and the facts of the case. The words "for their accommodation" do not signify for the convenience of *all parties,* Miller included, but for the accommodation or convenience of the appellants exclusively. The words of the the acceptance, (which must be construed together,) are, "I will give my note or my firm's note for the balance then due Cline & Francis at six months for *their* accommodation," and can by no construction be understood to imply a note for *Miller's* accommodation. The fact that when the houses were plastered, Miller, instead of paying $250 in cash, (then actually due,) paid $237.50, equivalent to a note at six months, at a discount of five *per cent.,* affords no foundation for the inference that thereby Miller has himself construed the words in the acceptance in favor of the appellants, but on the contrary their acceptance of this $237.50 in satisfaction of their demand at that time, and their omission, (the houses being then plastered,) to claim a similar liquidation of "the balance then due them," affords a strong inference that they did not consider themselves entitled to any other than an *accommodation note* for such balance, and that they *then* acquiesced in the construction evidently insisted on by Miller, that they were entitled to a "*note for value*" only for the third instalment of $250 and not for the *balance,* the payment of which was made dependent on the completion of the houses.

4th. That upon a fair construction of the terms of the order of Birmingham and the acceptance of Miller, considered as it properly and necessarily must be, in connection with the terms and conditions of Miller's contract with Birmingham, set forth

in the mortgage, independently of the use of the words, "for their accommodation," and on the theory of a general and unqualified acceptance of the order by Miller, the non-completion of the houses by Birmingham, operated as a complete release of all and every liability on the part of Miller to pay the appellants the balance sued for in this action. It cannot be said that the money to pay this balance is in the hands of Miller by virtue of his contract with Birmingham, contained in the mortgage, because by the express limitation of Birmingham's order, as accepted by Miller, this balance was payable exclusively out of the *fourth* instalment to be due "when the said houses are completed by me," (Birmingham.) In fact the houses never were so completed. Birmingham never became entitled to the fourth instalment out of which this balance was to be paid; and even if Miller had in his hands, *(which cannot be inferred,)* any balance of the first three instalments he had no right, under the order, to appropriate it to Cline & Francis beyond $750 as against Birmingham or his assigns.

ECCLESTON, J., delivered the opinion of this court.

On the 26th of November 1851, Andrew Birmingham executed a mortgage to William D. Miller to secure certain advances agreed to be made by Miller for the purpose of aiding and assisting Birmingham in the erection of ten houses, on certain lots of ground in Baltimore, the same day leased by Miller to Birmingham. Those advances were to be $400 on each house, provided they were completely finished by Birmingham. The security intended by the mortgage being dependent upon the progress of the houses to completion, it was stipulated that $75 on each should be paid by Miller when the second story of joists should be laid, $100 when the roofs should be put on, $125 when the houses should be plastered, and $100 when the same should be fully completed and finished. The whole sum of $4000 thus to be advanced was to be expended in the purchase of materials for, and in defraying other expenses necessarily incurred by Birmingham in, the erection and construction of the buildings. The appellants, Cline & Francis, (who were brick-makers,) received an order

from Birmingham on Miller, dated the 29th of November 1851, in the following words:

"*Mr. William D. Miller,*—Please pay Messrs. Cline & Francis for two hundred 'and fifty thousand bricks, more or less, to say, for the run of kiln six dollars and fifty cents per thousand, and fifteen dollars for front brick per thousand, to be paid out of advances made to me on ten houses to be built in Gay street, between Caroline and Dallas, that is to say, twenty-five dollars on each house when the second floor of joists are laid, and the same amount on each when roofed in, and the same amount on each when plastered, and the balance to be paid when the said houses are completed by me. It is also understood they are to furnish me the paving brick at $6.50 per thousand. ANDREW BIRMINGHAM."

On which order was endorsed the following acceptance: "December 10th, 1851. Accepted with the condition, that when said houses are plastered I will give my note or my firm's note for the balance then due Cline & Francis, not exceeding the amount of bricks specified herein, at 6 months, for their accommodation. WILLIAM D. MILLER."

On the basis of this order and acceptance the appellants furnished to Birmingham, prior to the 1st of August 1852, bricks to the amount of $1751.37. On the 13th of March 1852, the first instalment of $250, or $25 on each house, was paid under the order; and the second instalment of the same amount was paid on the 23rd of April in the same year. On the 21st of July following, and after the ten houses were all under roof and plastered, payment of the third instalment was made under the following circumstances: It was suggested that the sum of $250 was not then payable in cash, but that Cline & Francis were only entitled to a note for the same at 6 months, whereupon they made an abatement of 5 per cent. or $12.50. The receipt given for this payment is, as follows:

"$250.00
"5 00. 12.50    "Received, July 23rd, 1852, amount of 3rd instal-
――――――    ment of $250.00, of W. D. Miller, on the within
"237.50    order.

CLINE & FRANCIS."

On the 24th of August 1852, the note of the defendant, at six months, dated the 13th of the same month, for the balance then due the plaintiffs for bricks, was tendered to them by the defendant.   Which note was offered on the condition that the plaintiffs, or one of them, would sign a receipt acknowledging the note was given for their accommodation; and that if at its maturity the houses should not be completed by Birmingham, then they, the plaintiffs, were to take up and pay the note, they having no claim on Miller for the payment of the note, until the houses should be completed by Birmingham, but that when so completed then the note was to be paid by Miller, and not otherwise.   The plaintiffs refused to sign the receipt, and instituted this suit on the 6th of January 1853. The houses never were finished by Birmingham, and the defendant denies that he is responsible to the plaintiffs.

The original contract for the bricks having been made between the plaintiffs and Birmingham, and it being admitted that they were supplied by the former to the latter, " on the basis of said order and acceptance," the liability of Miller, if any exists, must rest upon the order and acceptance; and the words " for their accommodation," at the conclusion of the acceptance, have given rise to the controversy.

The terms on which the defendant proposed giving his note not having been acceded to by the plaintiffs, none was given; and this suit is based upon the acceptance alone, the *nar* containing no special count but the common counts in *assumpsit*. The dispute is whether the plaintiffs can recover the fourth or last instalment mentioned in the order; the other three, it is admitted, have been paid, and no claim is made for either of them.

The plaintiffs insist there was such consideration for the acceptance as shows it not to be what the law considers accommodation paper, that an accommodation note in its legal sense was not designed, but the word accommodation simply meant for the convenience of the parties.   In support of this view it is said, that by the contract between Miller and Birmingham, and by the terms of the order, when the houses should be plastered the former was to pay two hundred and

36    v.8

fifty dollars in cash, whereas by the acceptance he was to give a note at six months, when the houses were plastered, for both the last instalments. By this he gained a credit of six months instead of paying cash, and that was a consideration for promising to give an absolute note, including the last or contingent instalment, depending upon the completion of the houses. But it must be recollected, that at the date of the acceptance all the payments were contingent, none absolutely due, and might never become so. If the order had been accepted in its own terms the defendant would never have been responsible for the last instalment, as the houses never were finished by Birmingham.

And it does not seem to be a reasonable supposition, that the credit of six months upon $250 induced the defendant to agree to bind himself, unconditionally, to pay nearly $1000, when, previously, his only responsibility rested upon a contingency which might never happen, and when in the instrument, by which he bound himself to the plaintiffs, it is expressly said, he did so " for their accommodation." As the original agreement was, that the advances should be made to Birmingham, the defendant was under no legal obligation to the plaintiffs until he accepted the order.

Although a payee may refuse to take a conditional or qualified acceptance, yet, if such an acceptance is offered and he takes it, he can only claim payment according to the condition or qualification. *Chitty on Bills,* 287, 288, 301, 302, 303, *(Ed. of* 1842.) *Byles on Bills,* 149, *marginal page. Story on Bills,* 240. The plaintiffs agreed to the terms proposed in this instance by taking the acceptance, which stipulated that the note to be given to the plaintiffs should be " for their accommodation. In proper grammatical construction the word " their" relates to " Cline & Francis." The defendant having given such an acceptance, and the plaintiffs having consented to receive it, by the express agreement of the parties, the note to be given was to be a note for the accommodation of the plaintiffs. In view of the language employed, and especially when considered in connection with the order and circumstances in the cause, it would require a very forced con-

struction to say that the word "accommodation" was not designed to be used in its legal or technical sense, but that inasmuch as the defendant was to get six months' credit on $250, he was to bind himself, unconditionally, to pay nearly four times that sum, instead of remaining only responsible upon a contingency, and therefore the acceptance only meant the note was to be given for the convenience of all the parties. It would seem to be rather a singular mode of providing for the convenience of the defendant, whilst the accommodation of the plaintiffs would be very evident, as they were to get a note at six months for the $250, and the larger sum previously depending upon an uncertain contingency.

The mortgage shows that Birmingham was lessee of the lots and designed erecting the buildings as his own. For the purpose of aiding him in doing so, Miller agreed to advance or lend him $4000, to be paid in four instalments. To secure the repayment of the loan the mortgage was executed, and the efficacy of the mortgage as a security for the money depended upon the erection and completion of the houses. For that reason the advances, from time to time, were made to depend upon the progress of the buildings, and the last was not to be made until the houses were completed by Birmingham. Until that was done, he had no right to demand the last instalment. The order shows it was drawn in reference to the contract disclosed in the mortgage. Instead of the order being accepted, payable in its own terms, the acceptance was as already stated. Now under these circumstances it would seem reasonable to suppose, that in saying the note which was to be given should be for the accommodation of Cline & Francis, it was intended they should be accommodated with the name and credit of Miller, or of his firm, by a note at six months, which might be discounted in the market, thereby obtaining the use of the money at once instead of waiting for the houses being finished; but designing at the same time, that as between the parties the note should be accommodation paper for the purpose of preventing Miller's contingent liability from being converted into an absolute responsibility. If such was not the meaning of the words, "for their accommodation," and so intended by the

parties, those words were perfectly useless, meaning nothing but what would have been effected by the acceptance without them. But by giving them the construction we have indicated they have their usual legal signification, and whilst giving them effect in accordance with their legal import, they will be so interpreted as to be consistent with what may very fairly be considered as designed by the parties, especially in regard to the last instalment, which is now the only one in contest.

The result shows, in dollars and cents, what was the value of the six months' credit on the third instalment of $250. Miller cashed it for $12.50. If then the plaintiff's interpretation of the acceptance be correct, the defendant was induced to convert his uncertain liability for the last instalment into a positive obligation to pay it in six months, for the very moderate consideration of $12.50. And this is not all, because by such an arrangement, the payment ceasing to depend upon the completion of the houses, the motive on the part of Birmingham to finish them, so carefully provided for in the original contract and also recognised in the order, would no longer exist. And if Miller, by his acceptance, was bound to pay the last instalment to the plaintiffs whilst the houses were unfinished by Birmingham, the security for the repayment of the money under the mortgage would not be equivalent in value to what was originally designed, by making this advance to depend upon the completion of the buildings. No doubt money will produce very strange effects sometimes, but it is scarcely possible that a man of even ordinary business intelligence, much less one of large experience and shrewdness, would, for five per cent. on $250, make a surrender of such important rights, so securely protected, as we are asked to believe was done by this defendant.

But the plaintiffs insist, that as the third instalment was no longer contingent after the houses were plastered, for the note which was to be given, so far at least as that was concerned, there was a consideration, and to that extent the note could not be accommodation paper, and if not, it could not be so for any portion of it. In other words, they say that a note or bill of exchange, which, as between the original parties, is

Cline & Francis, *vs.* Miller.

binding in part on account of consideration to that extent, cannot be accommodation paper for the residue. But if binding in part, it is likewise so *in toto*. This we understand to be the view of the plaintiffs' counsel, whilst relying upon the authority of *Byles on Bills*, 226, in 16 *Law Lib.*, 141, who, in giving a definition of an accommodation note, described it as being without consideration. But the writer was not considering the precise point now before us, and his definition in its general application is correct. We think, however, an examination of the authorities will show they do not sustain the doctrine contended for by the plaintiffs' counsel.

*Barber vs. Backhouse & others, Peake's Nisi Prius Cases,* 61, was an action on a bill of exchange. Brown, one of the defendants, had suffered judgment by default, the other defendant had paid £5, 9 s., into court. For the residue of the bill they contended they were not liable. The £5, 9 s., paid into court was the amount of the plaintiff's bill for business done as an attorney for all the defendants; the remainder of the claim was for business done for Brown only, who had drawn the bill on the partnership and accepted it unknown to the other defendants.

Law for the plaintiff contended, that the payment of the money into court admitted the bill was good for part, and if good in part it was good *in toto;* but Lord Kenyon thought otherwise, and the jury found a verdict according to the opinion of the court. At the next term, Mr. Law said he was perfectly satisfied with the decision.

In *Darnell vs. Williams,* 2 *Stark. Rep.,* 166, the payee sued the acceptor on a bill of exchange for £19, 5 s. It was proved, that after the bill became due the defendant paid £10 upon it and took the bill away with him. The defendant proved, that when the bill was tendered to him for acceptance he said he had agreed to accept a bill for £10 only, but that the plaintiff having urged him to do it as an *accommodation* to him, the plaintiff, he had accepted the bill. The sum of £10 had been paid into court. Lord Ellenborough held: "That although with respect to third persons the amount of the bill might be £19, 5 s., yet as between these parties it was an

acceptance to the amount of £10 only, and the plaintiff was nonsuited."

In *Story on Prom. Notes,* sec. 190, it is said, that the total or partial want or failure of consideration may be insisted upon as a defence or a bar between any of the immediate or original parties to the contract. And in the same section the author says: "If there be a partial want or failure of consideration, it avoids the note only *pro tanto*." See also *Story on Bills,* secs. 184, 187, and the notes, and *Byles on Bills,* 98, 99.

In *Chitty on Bills,* 70, it is said: "The defendant may show that he received no consideration, or none that was in point of law adequate, and thus may entirely defeat the action or reduce the claim." See also *Mulliken vs. Boyce,* 1 *Gill,* 65.

According to the principles recognised in these authorities, although it may be, that after the houses were plastered the acceptance would have bound the defendant to the extent of $250, because there was consideration to that amount, and if that sum had not been paid it might have been recovered from him, still it does not follow, that he could not have defended himself successfully against the fourth instalment in consequence of the houses not being completed.

Even supposing that in consequence of the contingent liability of Miller for the last instalment there was not a *want* of consideration, yet as it is admitted the houses never were finished by Birmingham, there is *a failure* of consideration, and that is a good defence against the present claim under the acceptance.

The bricks furnished by the plaintiffs were sold and delivered to Birmingham, not to Miller, consequently that transaction did not, originally, constitute any consideration as between the parties to this suit. Nor do we see that the evidence shows any responsibility at any time from the defendant to the plaintiffs, except what the order and the acceptance created. Inasmuch, therefore, as the order provides for the payment of the last instalment when the houses should be completed by Birmingham, which is consistent with the original contract between him and Miller, and which provision was made for the secu-

rity and protection of the latter in regard to the advances he was to make; and it is admitted that the houses never were finished by Birmingham; and the acceptance is with the condition that the note to be given should be for the accommodation of the plaintiffs, we do not think there is any legal obligation on the defendant to pay the last instalment.

The claim of the plaintiffs is based upon the order and the acceptance. The order, in express terms, makes the fourth payment to depend upon the completion of the houses. The acceptance, in providing that a note, including the amount of this payment, should be for the accommodation of the plaintiffs, seems designed for the very purpose of preserving the responsibility of the acceptor in its contingent character, and the contingency on which he was to pay not having occurred, the plaintiffs have no right to demand payment of him.

In our opinion, it is shown very clearly by the plaintiffs' proof, in connection with the facts admitted, that they have no cause of action against the defendant; it is, therefore, unnecessary to enquire into the correctness of the decision below in regard to the defendant's prayer, because whether right or wrong, the case would not be sent back under a *procedendo.* We will therefore say—

*Judgment affirmed.*