### VERMONT MARBLE CO. *v.* CHARLES B. MANN.

#### *Contract.   Construction.   Draft.   Acceptance.*

The plaintiff sold the defendant a quantity of marble to be used by the defendant in the construction of a walk for the United States government, for which the defendant was to pay the plaintiff when his contract with the government should be accepted and he should receive his pay from the government. *Held*, that the plaintiff's demand became payable, not when the defendant became entitled to his pay from the government, but whenever by due diligence he might have received payment from the government.

The work in question was accepted in 1860, but the defendant afterwards made two alterations in the work, so that payment was delayed until December, 1861. *Held*, that the delay of payment having been caused by the act of the defendant, the stipulated credit had expired, and that the action brought in August, 1861, was not premature.

Soon after the marble in question was measured, P. Cashier of the Bank of R., presented to the defendant for payment or acceptance, a sight draft of the plaintiff on the defendant, which had been received as collateral security for a debt due from the plaintiff to the bank. The defendant told P. that he would pay it when he received his money from government. P. not having promised to wait until the defendant should receive his pay from government, nor to apply it in payment of the plaintiff's indebtedness, unless it should be actually paid, it was *held*, that P. did not receive the defendant's promise as an acceptance. PECK, J., dissenting.

BOOK ACCOUNT.   An auditor was appointed who reported substantially as follows :

45

The plaintiff's claim consisted of a single item amounting to $670.44. Some time in the year 1860, and previous to the month of May of that year, the defendant entered into a contract with the agents of the United States government to construct a marble sidewalk in the village of Rutland; the work to be done according to specifications, and to the acceptance of Ammi Young, the architect and agent designated by the government for that purpose, and payment to be made upon the acceptance thereof by Young; but whether said work was to be completed within a specified time, did not appear.

In the latter part of May or early in June, 1860, the defendant entered into a contract with the Vermont Marble Company, by which it was verbally agreed that said Company should furnish to the defendant the marble necessary to construct said sidewalk, on or before the 10th day of July, 1860.

On the 6th day of August, 1860, the work had been completed by the defendant, and the Vermont Marble Company by their president, Parker, made their draft upon the defendant for the amount claimed by them upon said contract with the defendant, payable at sight, to the order of John B. Page, and delivered the same to Page, who thereupon, on the same day, presented it to the defendant for acceptance, to which request to accept, the defendant replied in the following words :

" I will pay when I get my pay from Uncle Sam," meaning, in fact, when he got his pay from the United States government upon his contract to construct said sidewalk, and the same was so understood by Page.

At the time the draft was given to Page, who was then cashier of the Bank of Rutland, the plaintiff was indebted to said bank to an amount exceeding the amount of said draft, which indebtedness had never been paid by the plaintiff, nor by any one in their behalf. The draft was received by Page for the bank, as collateral security for the payment of said indebtedness. No credit had been given to the plaintiff for the amount of the draft or any portion of the same, but the draft had remained in possession of the Bank of Rutland from the 6th day of August, 1860. Page made no express agreement with the defendant that

he would await the payment of said draft until the defendant should receive his pay from the government, nor did he agree to apply the amount of said draft on the indebtedness of the plaintiff to the bank, unless the same should be actually paid. Page, soon after the 6th day of August, 1860, informed Parker in what terms and upon what condition the defendant accepted the draft. The draft has never been paid by the defendant, nor any part thereof.

At the time the plaintiff and defendant made their contract, it was understood and agreed that the defendant should pay the plaintiff for the marble when the defendant should receive his pay from the United States Government, upon his contract with the latter to construct said walk. The defendant, at the same time, informed the plaintiff that he would be entitled to and should expect to receive his pay for constructing said walk, immediately upon the completion thereof, and it was in the contemplation of both the plaintiff and defendant that the job would be completed in the summer of 1860, that the work would be accepted by Young, and that the defendant would thereupon and without protracted delay receive his pay.

Some time in the month of September, 1860, said walk was inspected by the agent of the government. The work was done according to the specifications furnished by the government to the defendant, and to the approval and acceptance of said agent, and thereupon the defendant was entitled to his pay from the government upon his contract. The government agent, however, desired certain alterations to be made in the curbing of said walk and in other respects, and a new and additional contract was entered into between the agent and the defendant, by which the defendant, for additional compensation, agreed to make alterations, and the work was performed and completed by the defendant sometime in the fall of 1860.

Soon after the walk was laid, but the precise time did not appear, the water began to percolate and run under, and so injured the same that in the course of a few months it became apparent that it would be necessary to relay it, and accordingly the defendant, for additional compensation, was employed by the government

to relay said walk. It did not appear when this agreement was entered into, but the work of relaying the walk was performed by the defendant in the summer of 1861, and it was accepted by the government.

The defendant was paid by the government upon his three several contracts aforesaid, in one gross sum, amounting to over twenty-nine hundred dollars, on the 19th day of December, 1861. This suit was commenced on the 26th of August, 1861.

On the auditor's report the county court, September Term, 1862,—KELLOGG, J., presiding,—rendered a judgment in favor of the plaintiff for the sum of $665.94, with interest thereon, as damages. Upon the question as to the effect of the facts reported in respect to the draft, on the plaintiff's right of recovery in this action, the decision of the court was *pro forma.*

To the decision of the court in rendering the said judgment the defendant excepted.

*J. Prout,* for the defendant.

1. The draft operated as an assignment of the funds in the hands of the defendant, and his promise to pay on time, has the effect of rendering him liable to the bank for the amount, according to the terms of his promise. Their cause of action against him was complete, the instant he received his pay from the government. *Harrington* v. *Rich,* 6 Vt. 666 ; *Blin* v. *Pierce,* 20 Vt. 25 ; *Stiles* v. *Farrar,* 18 Vt. 444 ; *Dickinson* v. *King,* 28 Vt. 380 ; *Morton* v. *Naylor,* 1 Hill 583 ; *Bellows* v. *Bingham,* 28 Vt. 243. The debt of the defendant due the plaintiff, was transferred upon a consideration, as the case shows.

2. The draft drawn and acceptance of it, extinguished the original claim of the plaintiff, and bound the defendant to pay according to the terms of his acceptance. *Wageslow* v. *Keene,* 1 Strange, 214 ; *Mason* v. *Hunt,* 1 Douglass, 297 ; *Julian* v. *Sherbrook,* 2 Wilson, 9 ; *Smith* v. *Abbott,* 2 Strange, 1152 ; *Miln* v. *Prest,* 4 Camp. 393 ; Byles on Bills, 257, 258, 252, note 1 ; *Walker* v. *Sherman,* 11 Met. 170 ; *Fisher* v. *Beckwith,* 19 Vt. 31 ; *Fairlee* v. *Herring et al.,* 13 C. L. 78 ; *Ward* v. *Allen,* 2 Met. 53 ; *Parkhurst* v. *Dickerson,* 21 Pick. 307. A *promise* to accept an

existing bill is an acceptance, and binds the acceptor.   *Wynne* v. *Raiks*, 5 East, 514 ; *Bank* v. *Archer*, 11 M. & W. 389.

The fact that the draft was taken as collateral to the debt of the bank against the plaintiff, cannot effect the result of the case.

*Edgerton & Paul*, for the plaintiff.

The debt had become due when the suit was commenced.  The defendant's contract with the government was performed to their acceptance as early as September, 1860 ; and it is evident that the defendant could and would have received payment of the government at that time but for the delay voluntarily given by the defendant in consequence of his two subsequent contracts for an alteration of the work.  The original cause of action on the book account, did not become merged in the draft.  *Hutchins et al.* v. *Olcutt*, 4 Vt. 549 ; *Follett & Bradley* v. *Steele*, 16 Vt. 30.

The offer of the defendant has never been acted upon by any of the parties, as an acceptance.  The bank immediately gave notice to the plaintiff and thereby continued their indebtedness to the bank in force.  The defendant has never paid or offered to pay ; and the plaintiff has sued on the original account. Bayley on Bills, 183 ; *Sprout* v. *Matthews*, 1 Term, 182.

PECK, J.  This is an action of book account in which the plaintiff seeks to recover for a quantity of marble.  The plaintiff's claim consists of a single item of $670.44.  The marble was sold and delivered under a special contract to furnish marble at a specified price *per* foot sufficient to construct a certain sidewalk which the defendant had contracted to build for the United States Government.  The marble was by agreement to be measured after it should be all laid in the sidewalk.  It was delivered and the walk laid and completed about the 6th of August, 1860, and the marble measured by the plaintiff and the defendant according to contract.  This action was commenced August 26th, 1861.

The first objection made to a recovery is, that the term of credit had not expired at the commencement of the suit.  If this is the fact the objection is fatal, as there are no other dealings

between the parties to uphold the action. The auditor finds that at the time these parties made the contract it was understood and agreed that the defendant should pay the plaintiff for the marble when the defendant should receive his pay from the United States upon his, the defendant's contract to construct the walk. The defendant at the same time informed the plaintiff that he would be entitled to and should expect to receive his pay for constructing the walk immediately on the completion of it. The auditor finds that it was in the contemplation of both the parties that the job would be completed in the summer of 1860, that the work would be accepted by Young, the agent of the government, and the defendant would thereupon and without protracted delay receive his pay. It is claimed by the plaintiff that this amounts to an agreement by the defendant to pay as soon as the defendant should be entitled to his pay from the government, and not an agreement to pay when he should actually receive his pay. We think this is not the fair construction of the contract. The contract as found by the auditor is to pay when the defendant should receive his pay from the government. The marble was going into the government works, and it is obvious that so far as the term of credit was concerned, the parties looked to the fund coming from the government as the means of payment to the plaintiff. It is true the auditor finds that it was in the contemplation of the parties that the job would be completed in the summer of 1860, and that thereupon the defendant would receive his pay of the government without protracted delay ; but this expectation is not inconsistent with, nor does it control the express stipulation. The plaintiff knew as well as the defendant the chances of a time intervening between the completion of the job and the actual payment by the government ; and it is evident that both parties in stipulating for a credit acted in reference to such an event. If the defendant represented truly the time when he would by his contract be entitled to payment, and proceeded with reasonable diligence to complete the job, or completed it by the time contemplated by the plaintiff and defendant, and was guilty of no unreasonable delay in causing it to be accepted and procuring payment from the government, the credit stipulated

for in the contract between these parties would not expire till the defendant had received payment from the government. · We do not say that the plaintiff would have lost his claim had the government wrongfully refused ever to make payment ; we speak in reference to the case before us. It appears that the defendant represented to the plaintiff correctly as to the time when he would be entitled to receive payment from the government, and that the job was completed and accepted about the time the parties contemplated. It does not appear expressly that the defendant was guilty of negligence in procuring payment ; it is left to inference from lapse of time and the absence of proof as to what efforts he made for that purpose, together with the fact that the defendant made a further contract with the government. The plaintiff's demand became payable whenever the defendant by due diligence might have received payment from the government. If the defendant did any act or entered into any new arrangement which had the effect to postpone the receipt of the money from the government, the plaintiff's claim might become payable before the actual receipt of the money by the defendant. It appears that when the work in question was accepted in September, 1860, the agent of the government concluded to have an alteration made in it, and employed the defendant for a new consideration to make such alteration. This the defendant performed that fall. It also appears that subsequent to this, the agent employed the defendant for an additional compensation, to take up the walk and relay it, in consequence of injury done to it by the frost. This work the defendant completed in the summer of 1861, and it was accepted by the agent. On the 19th of December, 1861, after the commencement of this suit, the defendant received payment of the government, about $2900. for the work done under these three contracts. This action was commenced August 26th, 1861 ; so that nearly a year elapsed after the defendant was entitled to payment from the United States Government, before this suit was commenced. We think in the absence of any proof to show what efforts the defendant made to procure payment, it is fairly to be presumed that the new contracts for additional work upon the same walk caused a delay in the payment by the government for the work done under

the first contract, either by causing the government to decline payment till the whole work was finished, or by inducing the defendant to neglect to call for payment till he had completed the entire work. This delay having been caused by the act of the defendant, the stipulated credit had expired and the defendant has no right to insist that the action was premature.

2. It is also objected that the draft drawn by the plaintiff in favor of Page, cashier of the Rutland bank, on the defendant for the amount of this debt, and delivered to Page as collateral security for a debt the plaintiff owed and still owes the Bank, and, as the defendant claims, accepted by the defendant, is a bar to the suit. This draft was drawn at sight and presented to the defendant for payment or acceptance, just after the marble in question was measured. The defendant told Page he would pay it when he received his money from the government for this work done under the first contract. There is no doubt but that a parol acceptance is binding, and no doubt but that an acceptance varying the time of payment from the time specified in the bill, is as binding as if absolute according to the terms of the bill, if the holder accepts it. The only doubt in this case is whether Page received the defendant's promise as an acceptance, and whether the parties so understood and treated it. I think the facts reported show that it was so treated, or at least that the transaction amounts to such an equitable appropriation of of the fund to the use and benefit of the bank, that the plaintiff ought not to be allowed to collect this debt and divert it from the bank. But the majority of the court do not give to the facts reported on this point precisely the same legal effect that I should be inclined to. But we are all agreed that there is sufficient doubt whether the defendant may not hereafter be held upon that acceptance, to warrant the court in imposing a rule upon the plaintiff which shall protect the defendant from such liability. The judgment is affirmed under a rule that the plaintiff shall not. have execution till he causes the draft to be deposited with the clerk for the defendant, or a release by the bank to the defendant of all claim upon him by virtue of the draft or his acceptance or promise to pay it to the bank.