TUREMAN, *Executor*, v. STEPHENS, *Appellant.*

**Contract:** ACCEPTANCE: REPUDIATION. A party cannot accept and make his own the benefits of a contract, and then by his own act repudiate its obligations as to himself.

F. exchanged realty in Colorado with S. for realty in Missouri, and it was agreed by F. that if S. should be dispossessed of the Colorado property by due course of law because of failure of title thereto, F. should pay him $500, and S. agreed to pay to F. the excess for which said Colorado property might at any time be sold by S. over $1500 and up to $2000 within thirty days after such sale. *Held* that S. was compelled to sell whenever he should receive a *bona fide* offer of over $1500 and pay to F. the excess over that sum up to $2000; or he might refuse to sell, provided, he paid the excess the same as if a sale had been made.

*Appeal from the Audrain Circuit Court.*—HON. ELIJAH ROBINSON, Judge.

AFFIRMED.

*Sydney K. Smith* for appellant.

(1) Under a contract the liability of the defendant is conditional upon a sale by him which rests entirely within his discretion. Until that event happens the promise of defendant is inoperative and cannot be enforced. 1 Whar. Con., 784; *Nelson v. VanBonhorst*, 29 Pa. St. 352; *Barry v. White*, 59 Pa. St. 173. Conditional contracts are to be construed like all other contracts. 2 Parson on Con. (7 Ed.) 526; 1 Whar. Con. 740, 741. (2) If a party cannot procure the performance of a condition of which he permitted the insertion, he is remediless unless it be procured by fraud. 2 Parsons on Con. (7 Ed.) 527; *Scott v. Liverpool*, 28 L. I. 230; *Mills*

*v. Bagley*, 32 L. I. Eq. 179 ; *Coles v. Turner*, L. I., I., C. P. 373. (3) The contingency upon which defendant's liability depends can and may happen. Flood "assumed the risk, and he must wait until the contingency happens on which his pay, by contract, depends." *Perry v. Cooper*, 8 Mo. 152 ; *Allen v. Davis*, 11 Mo. 479 ; *Butterworth v. Bliss*, 52 Barb. 430. Defendant is not bound to hasten or sacrifice the Denver property, but is entitled to such time as will enable him to dispose of it at what it is reasonably and fairly worth. Until he has realized some benefit from it, there is no consideration for the promise of defendant. *Bryant v. Saling*, 4 Mo. 522.

*Macfarlane & Trimble* for respondent.

The $500 was due from the defendant by the terms of the contract, thirty days after he could have sold the Denver property for $2000 or more. In such case the obligation to sell was imposed upon defendant and the money sued for was due, whether he did in fact sell or refused to do so. That will be considered as done which ought to have been done. The literal fulfilment of the condition, which is precedent to the maturity of the money, was entirely within the control of the appellant himself. In such case the law does not require a literal fulfilment of the condition precedent, for obvious reasons, but orders the contract carried out at any time after the condition precedent might, by the exercise of ordinary diligence, have been fulfilled. *Vermont Marble Co. v. Mann*, 36 Vt. 703 ; 1 Addison on Con. (Morgan's Ed.) § 236 note ; *McIntyre v. Belcher*, 14 C. B. (N. S.) 653. The appellant not only failed to use due diligence to sell the land, but actually refused to do so when a purchaser was found by respondent and brought to his door. Appellant stands upon the letter of agreement and ignores its spirit. He insists upon that construction which keeps the word of the promise to the ear, but breaks it to the hope. The courts, following the law, construe according to the

intent, and in doing so frequently imply or reject words. Hilliard on Contracts, 281; 18 Iowa 356; 10 Mass. 183; 2 Atk. 32.

EWING, C.—This was a suit on the following contract:

"FULTON, MO., Feb. 22nd, 1876.

"This writing made and entered into between John A. Flood of Fulton, Missouri, party of the first, and James L. Stephens of Columbia, Missouri, party of the second part, witnesseth that in consideration of an exchange in real estate this day made and entered into between said parties, said Flood having executed and delivered to said Stephens a quit claim deed to certain property in Denver, Colorado, in said deed described, being a house and 2 lots Nos. 7 and 8 in block 174 in the eastern division of the city of Denver, and said Stephens having executed and delivered to said Flood his warranty deed for 83 acres of land in Callaway county, Missouri, in said deed described, said Flood doth hereby bind and obligate himself to pay to said Stephens, in case he is dispossessed of said premises in due course of law by a failure in the title to said Denver property conveyed, the sum of five hundred dollars; but should said Stephens at any time dispose of said property, then said five hundred dollars is not in any event to be paid. And in consideration of the premises said Stephens doth hereby bind and obligate himself and agree to pay said Jno. A. Flood the full amount for which said Denver property may at any time be sold by him or his agents over the sum of fifteen hundred dollars and up to the sum of two thousand dollars. Said amount to be due on said Flood's part in thirty days after notice of the ouster of said Stephens as aforesaid, and said amount to be due by said Stephens as aforesaid, in thirty days after a sale of said Denver premises. Each amount to bear ten per cent. interest from due as aforesaid.

"Witness our hands and seals the day and year first above written.

JAS. L. STEPHENS.
JOHN A. FLOOD."

The evidence tended to show that some time after the execution of the contract Flood died; and plaintiff, as his executor, on the 1st day of April, 1880, procured a purchaser for said Denver property, who offered defendant $2000 in cash for a quit claim deed thereto, and plaintiff then requested defendant to sell said property to said purchaser or to pay plaintiff the sum of $500 and release said Flood from further liability on his limited warranty. Defendant refused to do either; and. thirty days thereafter, to-wit: on the first day of May, 1880, the plaintiff made demand of defendant for the $500 due under the terms of the contract, which defend-- ant refused to pay. Whereupon plaintiff brought this suit to recover said $500 with interest thereon at 10 per cent. per annum from the 1st day of May, 1880. There was a waiver of jury trial, the case submitted to the court which found for the plaintiff, and entered judgment thereon for $556.25, from which the defendant appeals to this court.

The appellant insists that this $500 will not be due until 30 days after he shall have *actually sold* the property for $2,000 or more. Respondent insists that it was due 30 days after he *could have sold it* for $2,000 or more. These two opposite opinions present the question which is now submitted to the court.

In the construction of contracts the general rule is to give effect to the real intention of the parties, whenever that can be ascertained by the words of the writing: and the actual state of the facts. *Cleaveland v. Smith,* 2 Story's Rep. 289. In *Peery v. Cooper,* 8 Mo. 205, it is said: "Contracts must be construed according to the plain intent and meaning of the parties." *Ubsdell & Pierson v. Cunningham,* 22 Mo. 124, is to the same effect. *Salmon Falls Mfg. Co. v. The Portsmouth Co.,*

*etc.*, 46 N. H. 249; *Rogers v. Broadnax*, 27 Tex. 238. Courts are bound to give legal effect to contracts according to the true intent of all the parties; and that intent may be ascertained when doubtful by the surrounding circumstances, and the object of the contract. 1 Hill. on Con., p. 281, sec. 12; *Karmuller v. Krotz*, 18 Iowa 352; *McIntyre v. Belcher*, 14 C. B. (N. S.) 653. "A contract which is not precise in its terms, must be construed in the light of the facts and circumstances surrounding the subject matter it embraces." *Crawford v. Elliott*, 78 Mo. 497. The question then is, what does the contract in this case mean? How shall it be interpreted if doubtful in its terms? What did the parties intend? Men frequently enter into written contracts, which are by no means free from doubt when the words and phrases used are alone resorted to for interpretation, but in which the intention yet may be quite manifest.

By the contract, if Flood's title failed and Stephens should be dispossessed on account thereof, Flood was to pay $500. On the other hand, Stephens bound himself to pay to Flood the full amount the Denver property might at any time be sold for over $1500; the amount to be due in thirty days after a sale of the Denver premises. Appellant insists that the Denver property not having been sold, he is not liable to pay; and that the plaintiff cannot recover until there shall be an actual voluntary sale on defendant's part. In *Vermont Marble Co. v. Mann*, 36 Vt. 697, "the plaintiff sold the defendant a quantity of marble to be used by the defendant in the construction of a walk for the United States government, for which defendant was to pay plaintiff, when his contract with the government should be accepted, and he should receive his pay from the government." There was some delay in the payment by the government caused by further contracts with the defendant. And the court held that "the plaintiff's demand became payable whenever the defendant, by due diligence, might have received payment from the government;" that "the delay having

been caused by the act of the defendant, the stipulated credit had expired and the defendant has no right to insist that the action was premature."

But from the mere reading of the contract under consideration the intention of the parties is manifest. The obligation on Flood's part was clearly dependent on the title, and the contingency of Stephens being dispossessed by reason of failure of title. It amounted to collateral warranty of title and possession to the extent of five hundred dollars. On the part of Stephens the contract provides that: "And in consideration of the premises, said Stephens doth hereby bind and obligate himself, and agree to pay said John A. Flood the full amount for which said Denver property may at any time be sold by him or his agents," etc. Does this indicate the intention of the parties to have been that, if a *bona fide* offer for said property had been made to Stephens afterwards, he could, by a refusal to sell, release himself from the payment to Flood? On the contrary it seems manifest to me that the ability to sell, or a *bona fine* offer to purchase, fixes the liability of Stephens, whether he should accept the offer or not. He could refuse to sell for the offer, but would be then bound to pay Flood. He would certainly have no right to defeat the very purpose of the contract on his part, by preventing the happening of the contingency that would make him liable. "If a party enters into an arrangement which can only take effect by the continuance of a certain existing state of circumstances, there is an implied agreement on his part, that he will do nothing of his own motion to put an end to that state of circumstances under which alone the arrangement can be operative." Addison on Con., p. 353, sec. 236; *McIntyre v. Belcher, supra*; *Stirling v. Maitland*, 117 Eng. Com. Law R. 840; *Hathaway v. Payne*, 34 N. Y. 92.

Stephens entered into the contract, no doubt, in good faith, and would have insisted on the recovery of the $500 from Flood, had his title failed and had he been

dispossessed of the Denver property; now can he, by refusing to sell when opportunity presents, avoid liability on his part? Can he on his part and by his act prevent the happening of the contingency which makes him liable? Where a party has accepted and made his own the benefit of a contract, he cannot avoid its obligations as to himself by his own act. In this case the contingency or circumstance which made its beneficial to Stephens, and which benefit accrued to and was and is enjoyed by him, to-wit: the ability to sell for $2,000, the increase in value in the property, is made nugatory and void by his own act, which the law will not permit. 2 Par. Con. (6 Ed.) pp. 790, 793; 34 N. Y. 92, *supra*. A party will not be permitted to profit by his own fraud. We conclude that the circuit court committed no error and the judgment is, therefore, affirmed. All concur.