## EUGENE A. RUMSEY et al. *vs.* JOHN L. LIVERS.

*Conditional Contract—Performance of Condition Prevented by Promissor—Condition Dispensed With—Promise to Pay Debt When Promissor Collects a Claim—Failure to Collect—Assignment of Claim—Payment of Sub-Contractor Dependent Upon Receipt of Price by Contractor—Instructions—Evidence.*

If a party who has promised to pay a sum of money upon the happening of a certain event, prevents that event from taking place, the condition is dispensed with and the promise to pay becomes absolute.

When a debt exists independently, but as to the time of payment the promise of the debtor is to pay if and when he collects a claim against a third party, he is bound to use due diligence to collect the claim, and if it be not collected by reason of his negligence or fault, the condition is discharged and his promise to pay is enforceable.

If a party agrees to pay a debt due by him when he collects a certain judgment which he holds, his assignment of the judgment to a third party will be treated as dispensing with the condition.

Defendant had a contract to put up an electric light plant for a third party, and employed the plaintiff to do a certain part of the construction work, under a contract by which it was provided that defendant should make payments to the plaintiff when he was paid by the third party, and that if defendant did not receive the contract price, the plaintiff should stand his ratio of loss to the amount of the contract. The third party in question gave to the defendant judgment notes for the whole amount of the contract price upon which judgments were entered. The plaintiff did his part of the work, and the defendant completed his contract with the third party, upon which the whole contract price became due. Only a part of the price was paid, but the defendant refused the plaintiff's request to enforce the judgments and afterwards he assigned them to other persons. In an action to recover the balance due to the plaintiff, *held,* that since the defendant had promised to pay his debt to the plaintiff upon receipt of a fund to which he was entitled and for the payment of which he had obtained enforceable judgments, the defendant was under an implied obligation to utilize the means at his command to enforce the payment by the third party upon which his liability to pay the plaintiff was conditioned.

*Held,* further, that the plaintiff is entitled to recover in this action if the evidence shows that the judgments could have been enforced by due diligence, but remained uncollected through the negligence of the defendant, or if without the consent of the plaintiff, the defendant elected to refrain from issuing execution, or if he assigned to third persons these judgments in which the plaintiff was interested under his

contract, and which he was entitled to require the defendant to retain and enforce.

*Held,* further, that the circumstance that the defendant thought that under an execution sale he might himself become the purchaser of the electrical plant, is immaterial.

In the above-mentioned action, prayers, granted at the instance of the plaintiff, instructed the jury that it was the duty of the defendant to enforce payment of the judgments by execution within a reasonable time, and if the defendant did not do so and the amount of the judgments could have been collected, then the plaintiff is entitled to recover his proportionate part of whatever the defendant could have recovered from the third party. Also that if the defendant without the consent of the plaintiff elected not to issue execution but to indulge the third party as to the payment of the judgments, then the defendant is liable to the plaintiff for the amount due under the contract between them. *Held,* that special exceptions to these prayers for lack of evidence to support them, were properly overruled, because there was sufficient evidence in the case to show that the judgments could have been collected in full, and there was also evidence that the defendant did not refrain from issuing execution by inadvertence, but as the result of deliberate decision taken in spite of plaintiff's requests.

Another prayer granted at the instance of the plaintiff instructed the jury that if the defendant assigned to other persons the judgments without the consent of the plaintiff, that constituted a wrongful conversion of the judgments to the extent of the interest of the plaintiff therein, and the plaintiff is entitled to recover his pro rata part. *Held,* that this prayer does not submit a question of law to the jury, since it was uncontradicted that the plaintiff had a substantial interest in the judgments; also that the reference therein to the plaintiff's pro rata part of the judgments, instead of to the value of his interest at the time of the conversion, is immaterial, since the plaintiff's pro rata part of the judgment was exactly equal to the amount due him under his contract.

The relation between the plaintiff and the defendant in this case was not that of partners sharing profits and losses, but that of debtor and creditor.

The plaintiff in an action to recover for his work in constructing an electrical plant, who had testified that he had been an electrical contractor for many years; that he had installed nearly one hundred plants of the character of that referred to in this case, and that he had had occasion to value plants of that description, may be asked what in his judgment, founded upon that experience, was the fair value of the plant in question when he saw it in operation.

In an action to recover a sum of money alleged to be due, evidence that the defendant would have been able or disposed to pay it if a certain event had happened is irrelevant.

*Decided February 24th, 1910.*

Appeal from the Circuit Court for Cecil County (PEARCE, C. J., ADKINS and HOPPER, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Horace M. Rumsey* and *Frederick T. Haines,* for the appellants.

*W. T. Warburton and Henry A. Warburton,* for the appellee.

URNER, J., delivered the opinion of the Court.

The appellants contracted with the Bolivar Light, Heat and Power Company to furnish and install for it an electric light plant at the village of Bolivar in Westmoreland County, Pennsylvania, and the appellee entered into a sub-contract with the appellants to perform the construction work and provide part of the materials contemplated by the main contract. In consideration of this service the appellants agreed to pay the appellee fifteen hundred dollars. It was provided, however, that payment should be made "in the like manner

of the contract attached when payments are received by the party of the first part" (appellants). The contract thus referred to was that between the appellants and the company. It was further agreed by the appellee, in case of the failure of the appellants to receive the contract price "upon non-payment or from any other cause, to stand his ratio of loss to the amount of contract, and if suit is brought to stand the ratio of expense."

The contract price stipulated to be paid by the company to the appellants was $11,307.75 payable in designated installments. Immediately upon the execution of the contract, which occurred on March 6th, 1906, the company executed to the appellants three judgment notes aggregating the sum to accrue under the contract, and on the same day judgments by confession for the amounts of the notes were entered in the Court of Common Pleas for Westmoreland County in favor of the appellants in pursuance of the authorization in the notes for that purpose.

The appellee proceeded to the performance of his sub-contract and completed the work on July 15th, 1906. Payments to the amount of $2,181.13, the last being on September 9th, 1906, were made by the company to the appellants on account of their contract. The appellee received a due proportion of these sums according to the ratio which his claim against the appellants bore to their claim against the company. His total receipts amounted to $274.82. He was chargeable also with $258.75 for poles which he was to furnish but which the company itself supplied and for which it was credited by the appellants. Independently of these items the appellee's claim under his sub-contract remains unpaid.

The plant was put in operation when the appellee completed his work. The contract had then been fully performed on the part of the contractor, the various instalments of the contract price were then payable, the judgment notes were all matured and the judgments, constituting first liens on the company's property, were enforceable. No execution was ever issued on the judgments by the appellant firm, but on

June 17th, 1907, immediately after they received a letter from the appellee stating that he had placed his claim in the hands of his attorney, they assigned the judgments to the Rumsey Electric Company, limited, a separate partnership composed of the appellants and others and the assignees issued execution on October 31st, 1908. It does not appear from the record that the execution has ever been pressed to a sale of the property covered by the judgment liens. In the meantime, prior to the assignment of the judgments, the appellee had written the appellants repeatedly urging settlement with the company and the payment of his claim. He brought the present suit as a foreign attachment proceeding on December 10th, 1907. The appellants, as defendants below, appeared to the short note case, the trial of which resulted in a verdict and judgment for the appellee for the balance of his claim and interest.

A demurrer filed by the defendants to the whole, and each of the two counts, of the amended declaration presents the primary question for our consideration.

The first count declares in common form for money payable for work and labor done and materials furnished. The second alleges that the contract and sub-contract to which we have referred and then avers that the plaintiff fully performed his contract according to its terms and that the work so done and the materials so furnished were accepted by the defendants as a complete performance of the contract; that by its terms he was entitled to be paid in the like manner in which the defendants were to receive payment from the company under their contract with it; and that from time to time the defendants paid to him on account of his contract the sum of $533.57, leaving a balance due him of $966.43, which balance the defendants by the exercise of reasonable diligence could have long since collected by the execution upon certain judgments given to them by the company for the whole amount of their claim against it; which included the sum due by them to the plaintiff, but that the defendants have failed and refused to take steps to enforce and collect

the judgments by execution, and have failed and refused to exercise due and reasonable diligence to collect the amount of the judgments, but on the contrary; without the consent of the plaintiff, have elected to defer and delay the collection of the judgments and to give unreasonable indulgence to the company upon the judgments, which by the exercise of reasonable diligence the defendants could have collected, to the great loss and injury of the plaintiff, etc.

We have no difficulty in approving the action of the Court below in overruling the demurrer, as we are clearly of the opinion that the allegations in question set forth a good cause of action. The full performance of the sub-contract by the plaintiff and the acceptance of its results by the defendants undoubtedly created the relation of creditor and debtor between the parties; but as the agreement contained the unusual provision that the debt should be due when payments were received by the defendants under the principal contract, it was essential to the plaintiff's recovery that he should aver and prove not only the existence of the debt but also that it had become payable either on account of the actual receipt by the defendants of the sums due them from the company or as a result of such conduct on the part of the defendants as would preclude them from relying upon the provisions suspending the maturity of the plaintiff's claim. As the defendants agreed to pay their indebtedness to the plaintiff upon the receipt by them of a fund to which they were entitled and to secure the payment of which they had obtained judgments which were enforceable, they must, upon the plainest principles of justice, to be held to have incurred the implied obligation to the plaintiff to utilize the means of their command for the performance of the stipulated condition precedent. The payment of the compensation he had earned from the defendants could not be perpetually postponed merely because the company refrained from paying its debt to the defendants or because they omitted or refused to enforce its collection. They could insist upon their right to withhold payment from the plaintiff until their receipt of

funds from the company only by asserting their right under their contract with the company to the payment of the sums to which they were entitled, especially in view of the fact that this contract was specifically referred to in the sub-contract in relation to the manner in which the payments were to be received. It is manifest from the provision for an apportionment of the costs of suit against the company that the active prosecution of the defendants' rights under the original contract was contemplated, and the plaintiff was entitled to rely upon such action as a condition of his agreement to have the payment of his claim deferred. If the defendants committed a breach of this condition in consequence either of neglect or affirmative election, both of which are charged in the declaration, we see no reason why the stipulation in question should still remain available to them as a ground for postponing the payment of the plaintiff's demand.

In *Vermont Marble Co.* v. *Mann;* 36 Vt. 697, the plaintiff furnished for the defendant certain marble for use by the latter in the performance of a contract with the United States Government. It was agreed that the plaintiff should be paid when the defendant received his pay under the contract. Objection to the plaintiff's recovery was made on the ground that the term of credit had not expired at the commencement of the suit. In dealing with this situation and sustaining the plaintiff's right to recover the Court said: "If the defendant did any act or entered into any new arrangement which had the effect to postpone the receipt of the money from the government, the plaintiff's claim might become payable before the actual receipt of the money by the defendant."

The Supreme Court of Massachusetts, in *White* v. *Snell.* 26 Mass. 16, held that a promise by the defendant for value received to pay to the plaintiff a sum of money if and when the defendant shall collect his demands against a third person implies that the defendant will use due diligence to collect such demands; and in an action upon such promise it is not necessary to prove that the plaintiff requested the defendant to make collection. "If," said the Court, "the de-

fendant had power to neglect looking up those demands and thus to get rid of his contract, the law would aid him in the commission of a fraud. · Negligence shows a breach of his contract, as much so as a refusal to pay the plaintiff in case the demands had been collected."

In *Crooker* v. *Holmes,* 65 Maine, 195, a second mortgagee, under a mortgage securing a note payable when the mortgagor should sell the property on which he was then living, filed a bill to redeem the mortgaged land from the lien of the first mortgage. The mortgagors's equity of redemption had, subsequently to the making of the note, been sold under execution for another debt. It was urged against the suit to redeem that the note secured by the second mortgage was not payable because the maker had not sold, and could not sell, the property. The Court said: "The debt is due *in presenti.* Its payment is postponed to a future time, but the debt none the less exists. The debt is absolute, the time of its payment indefinite * * * If a party puts it out of his power to perform his contract, his liability at once accrues. It matters not whether by his neglect this be so, or whether it be intentional." The indebtedness was, therefore, held to be payable notwithstanding the condition precedent for its payment had not been fulfilled.

The general principle of the cases to which we have thus particularly referred is recognized also in *Nunez* v. *Dautel,* 19 Wall. 560; *Sears* v. *Wright,* 24 Me. 278; *Hicks* v. *Shouse,* 17 B. Mon. (Ky.) 483; *Noland* v. *Bull,* 24 Ore. 479; *Williston* v. *Perkins,* 51 Cal. 554; *Lee* v. *Decker,* 6 Abb. Prac. (N. S.) 392.

In discussing the questions presented by the demurrer we have had in view also those raised by the exceptions taken by the appellants to the rulings of the Court below in granting and refusing certain instructions to the jury.

The plaintiff offered three, and the defendants eleven prayers. All of the plaintiff's prayers and the defendants' second and tenth prayers were granted, while the remainder of the defendants' prayers were rejected.

The plaintiff's first prayer asked an instruction to the effect that if the defendants took the judgment notes and obtained the judgments to which reference has been made, and that their contract with the company was fully performed in July, 1906, and that the judgments were then due and payable, then within a reasonable time thereafter it was the duty of the defendants to proceed to enforce payment thereof by execution, provided the jury should find that any part of the judgments could have been realized upon execution; and if the jury should find from the evidence that the defendants did not proceed to collect by execution the amount of the judgments, then the plaintiff is entitled to recover from the defendants his proportionate part of whatever the jury should find might have been recovered by the defendants under such execution, with interest in the discretion of the jury, from the time when the jury should find they could have collected the amount of the judgments.

The second prayer of the plaintiff proceeded upon the theory that if the defendants, without the consent of the plaintiff, elected that they would not issue execution, but would indulge the company in the payment of the judgments, and continued to indulge them without the plaintiff's consent, then the defendants thereby made themselves liable to pay to the plaintiff the amount which the jury should find from the evidence was then due by the defendants to the plaintiff under the contract between them, with interest from that time, in the discretion of the jury.

By the plaintiff's third prayer the Court was asked to instruct the jury that if they should find that the assignment of the judgments by the defendants to the Rumsey Electric Company, the separate partnership heretofore mentioned, was made without the consent of the plaintiff, then such assignment constituted a wrongful conversion by the defendants of the judgments to the extent of the interest of the plaintiff therein, and the plaintiff is entitled to recover his *pro rata* part of the balance of the judgments as shown by the evidence with interest in the discretion of the jury.

It is evident that the first prayer is predicated upon the idea of mere passive neglect to enforce the payment of the judgments entered under the original contract, while the second and third prayers are based upon the theories, respectively, of an affirmative choice not to enforce payment and of positive change by the defendants of the plaintiff's relation to the instrumentality through which the payment was to be obtained. The theory of neglect, as applied in the first prayer, assumes the necessity of showing that the judgments might have been collected by due diligence, while the theory of deliberate action in altering the situation upon which the plaintiff had a right to rely, as presented in the second and third prayers, assumes a breach of the suspensory condition imposed upon the payment of the debt and its consequent release from that limitation, thus rendering it due and payable regardless of the collectibility of the judgments.

If the proceeds of the judgments, or of the contract under which they were given, had been the primary subject-matter of the agreement between the plaintiff and defendants, there could not well be a recovery unless the proceeds were shown to have been available. In this case, however, we are dealing with a debt which was created and now exists under a contract distinct from that under which the judgments were procured and which refers to the latter contract only for the purpose of regulating the time of payment. The plaintiff here is not suing for money which the defendants should and might have collected for him under the judgments in question, but he is demanding the amount which the defendants expressly agreed to pay him, and is insisting that their course of action has violated the provision suspending the payment of his claim and has left it in the same position it would have held if the time of payment had not been mentioned in the agreement; in which event, of course, it would have been due upon the performance by him of his contractual duty.

It seems to us, therefore, in the light of the principles and authorities to which we have referred, that the plaintiff was entitled to recover if the jury believed from the evidence that

the judgments might have been enforced by due diligence but remained uncollected through the negligence of the defendants, or that, without the consent of the plaintiff, they elected to refrain from issuing execution, or assigned to a third party the judgments in which the plaintiff was interested under the terms of his contract and which he was entitled to have the defendants retain, control and enforce. We are accordingly of the opinion that the plaintiff's prayers were properly granted. In reaching this conclusion we have not overlooked the fact that the third prayer is open to the technical objection that it is directed to the recovery of the plaintiff's *pro rata* part of the balance of the judgments upon the theory of a conversion by the defendants of the plaintiff's interest in them, without reference to the *value* of his interest at the time of conversion, which would ordinarily be the measure of recovery upon that theory. But as the act of the defendants in assigning the judgments to a third party, without the plaintiff's consent, if found by the jury, constituted a breach of the suspensory condition and entitled the plaintiff to payment of his claim without further delay and as the plaintiff's *pro rata* part of the judgments at their face value was exactly equal to the amount due him under his contract, we think that the defect in the prayer to which we have alluded was immaterial and harmless.

There were special exceptions filed by the defendants to the plaintiff's first and second prayers upon the ground that there was no evidence to prove what sum might have been collected by execution on the judgments, and to the second prayer for the further reason assigned that there was no evidence that the defendants without the consent of the plaintiff elected that they would not issue execution, and to the third prayer because it was supposed to submit a question of law to the jury, to wit, whether the plaintiff had any interest in the judgments, and because there was claimed to be no evidence that the plaintiff held any such interest.

In reference to the first ground of exception mentioned it is sufficient to say that there was evidence that the plant of

the Bolivar Company, upon which the judgments were a lien, was worth about $20,000, that the assured income from the plant was about $4,000 annually, that the debts of the company, independently of these judgments, amounted to $8,000 ; that the balance due on the judgments was $8,857,99, and that after they were obtained the defendants gave the company additional credit and received considerable payments from it upon an open account. From this evidence the jury could readily find that the judgments might have been collected in full.

There was evidence tending to show that the defendants refrained from issuing execution not because of inadvertence but as a result of deliberate decision, and that this was done in disregard of the plaintiff's frequent and urgent requests that action be taken to procure a settlement. It is obvious, therefore, that the further ground of exception to the second prayer cannot be sustained.

The third prayer did not, as suggested by the exception, submit a question of law to the jury. It is clear that the plaintiff had a substantial interest in the judgments under the terms of the agreement, and one of the defendants testified explicitly that the plaintiff "was interested in them to the extent of what he was to get under his contract."

The defendants' rejected prayers can be discussed briefly. Their first prayer sought to withdraw the case from the jury. In view of the evidence to which we have referred it could not properly have been granted.

The third prayer sought to have the jury instructed in effect that by the true construction of the contract all payments received by the defendants from the company were to be divided between the plaintiff and the defendants in the proportion that the claim of the plaintiff bore to the claim of the defendants, and if the jury should find that the plaintiff had received his proposition of all payments received by the defendants, he could not recover. By the fourth prayer it was asserted that according to the true construction of the contract the plaintiff had no interest in the judgment notes men-

tioned in evidence and that he could not recover on account of the failure of the defendants to collect the notes. The fifth was to the effect that there was no evidence sufficient to show that the defendants could have collected the judgment notes prior to the suit by the use of reasonable diligence. It was proposed by the sixth prayer to instruct the jury that though they should find that the judgments were assigned, yet they could not find for the plaintiff unless they further found that the assignment of the judgments prevented the payment of the debt due from the company to the defendants on the contracts offered in evidence, under the pleadings. The eighth was based upon the theory that if the plaintiff did not request the defendants to enforce the collection of the judgments, then he could not recover because the defendants did not enforce the judgments by execution. The eleventh was to the effect that the plaintiff had no interest in the judgment notes and could not recover on account of their assignment under the pleadings in this case.

It is apparent that these prayers are all in conflict with the principles we have found to be applicable to this case, and they were properly rejected.

The defendants' seventh prayer was, in substance, that if the jury should find that the judgments were assigned to the separate partnership merely as a collecting agent for the defendants, then the assignment did not render the defendants liable in this case. Evidence was offered, but not admitted, to prove that the assignment, which was absolute in its terms, was made for the purpose of collection. If such evidence had been admitted it would not have been material, in the view we have taken of the case. It appears beyond contradiction that the judgments were assigned without the consent of the plaintiff and that execution was not issued until October 31st, 1908, about sixteen months after the assignment and nearly a year after the institution of this suit, and there is nothing to indicate that even then it was prosecuted to a sale. The plaintiff was interested in the judgments as the instrumentality for realizing the fund whose collection

was the condition precedent to the maturing of his claim, and the transfer of the judgments to a third party without his consent, under the circumstances shown by the record, was a breach of the condition and had the effect of relieving the indebtedness of that restriction upon its payment. There was no error, therefore, in refusing this instruction.

By the defendants' ninth prayer the jury were sought to be instructed that by the true construction of the contracts the plaintiff and defendants were virtually partners sharing the profits and losses in the proportions provided in the contracts and that, therefore, the plaintiff could not recover in this form of action. We find nothing in the contracts or the record to support the theory of this prayer. The defendants' express obligation was to pay the plaintiff a designated sum of money, with a postponement of the time of payment until the collection of a certain fund, and the relation of the parties was simply and exclusively that of debtor and creditor.

There were seven exceptions taken by the defendants during the course of the trial to rulings upon the admissibility of evidence.

The first was to the admission of testimony by the plaintiff, as a witness in his own behalf, who after testifying that he had been an electrical contractor for many years, that he had installed nearly a hundred plants of the character of that at Bolivar, and that he had occasion to value plants of that description, was asked what, in his judgment founded upon that knowledge and experience, was a fair and reasonable value of the plant in question when he saw it in operation. His reply was that he would estimate it to be worth about $20,000. We think this evidence was clearly admissible as tending to show, by the valuation of a qualified expert, that the judgments were collectible.

The second and third exceptions relate to the exclusion of testimony of one of the defendants offered to be given to the effect that if any further sums had been received from the Bolivar Company they would have been prepared and able to pay the plaintiff his proportion. This evidence was ob-

viously immaterial and irrelevant, as the questions in issue related to the defendants' duty and liability, and not to their disposition or ability, to pay their debt to the plaintiff after the condition precedent to its payment had been by them performed or violated.

It appears from the fourth and fifth exceptions that it was proposed by the defendants to prove that their firm and the separate partnership to which the judgments were assigned were solvent at the time of the assignment. The plaintiff's objection to this offer was properly sustained as the evidence sought to be introduced was entirely irrelevant to any issue in the case.

The sixth exception was taken to the action of the Court below in striking out, on motion of the plaintiff, one of the reasons given by counsel for the defendants in his testimony for not issuing execution on the judgments more promptly, the reason so excluded being that his clients instructed him that they did not want to purchase the plant themselves. We think this reason for inaction in reference to enforcing the judgments was inconclusive and immaterial as affecting the plaintiff's rights in the premises, and it was properly excluded.

The seventh exception was to the exclusion of oral evidence tending to show that the assignment of the judgments while absolute in form was really made for collection. It is not necessary for us to pass upon the question whether parol evidence would be admissible for the purpose indicated, as we have already held in considering the defendants' seventh prayer that this evidence, under the circumstances shown by the record, was immaterial. It may be noted in this connection that one of the defendants testified that the transfer of the judgments was made on account of anticipated litigation.

The argument on behalf of the appellants was largely directed to the propositions that the judgment notes were merely collateral to the debt due from the Bolivar Company under the main contract, that there was no merger of the debt in the

judgments, and that, therefore, the plaintiff had no interest in them entitling him to complain of their assignment; but it is obvious from the view we have taken of the case that these considerations do not affect our conclusions.

We have found no reversible error in the rulings of the Court below and its judgment will be affirmed.

*Judgment affirmed with costs.*