ELBERT A. JONES vs. MARIA R. BOARDMAN, Ad-
MINISTRATRIX, ET AL.

*Contract—Sale of Patent Rights—Payment of Consideration—
Source of Payment—Corporation to be Organized.*

An agreement on the sale of patent rights in a manufactur-
ing device that a part of the consideration, to a named amount,
should be paid from cash to be received from the sale of securi-
ties of a corporation to be formed for the manufacture and
sale of the device, is valid.                                    p. 150

Where a source of payment of sums to be paid by a certain
person is designated, and such person, controlling the source of
payment, defeats the arrangement, he becomes personally liable
for the debt.                                                    p. 150

. Where payment for patent rights was agreed to be made from
the proceeds of securities of a corporation to be formed, the
payment is dependent upon a condition precedent, and recovery
is dependent upon fulfillment of the condition or its defeat by
the party in control of the source of payment.                  p. 150

Under a provision, in a contract for the sale of patent rights,
that, in case a corporation was formed for the manufacture and
sale of the device patented, the seller "should be paid from
fifty per cent. of the first cash received from the sale of securi-
ties of said corporation," *held* that such payment was to come
only from the proceeds of sale of the common stock which was
distributed to the purchaser in consideration of the transfer
of the patent rights by him to the corporation, and not from
the proceeds of sales of other stock by the corporation, nor from
commissions on such sales.                                    pp. 150-152

Statements by the purchaser, since deceased, that there was
a balance due from him to the seller, and that he still owed
him something, were not sufficient to show that there was an
undertaking by the purchaser additional to the contract as to
payment from proceeds of sales of stock.             .       p. 152

On appeal from an order disallowing a claim under a contract made by a decedent, on the ground that the payment of such claim was, by the terms of the contract, conditioned on the receipt of the necessary sum from the sales of certain securities, *held* that, though approving the lower court's construction of the contract, the appellate court would remand the case without either affirming or reversing the order, in order that the claimant might, if he so chose, adduce proof of the disposition by decedent or his representatives of securities from which the payment might be made.                    pp. 152, 153

*Decided April 15th, 1925.*

Appeal from the Circuit Court for Howard County, In Equity (FORSYTHE, J.).

Proceeding by Elbert A. Jones to subject real estate of Thomas V. Boardman, deceased, to the payment of his debts, to which Maria R. Boardman, administratrix, and others, were made parties defendant. From a decree for defendants, plaintiff appeals. Remanded for further testimony, without affirming or reversing.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*James Morfit Mullen,* for the appellant.

*James Clark* and *James J. McGrath,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

The appellant was patentee of a device for the saving of waste yarns in cotton mills, called a "bunch builder," and he made a contract with T. V. Boardman to sell the patent rights to Boardman "and associates" for $25,000, upon the condition that in case a corporation was formed for the manufacture and sale of the device he, Jones, should accept in full payment of his patent rights $10,000 of the $25,000 in money "to be paid to me from fifty (50%) per cent. of

the first cash received from the sale of securities of said corporation," and the remaining $15,000 of the price of $25,-000 in common stock of the corporation at par. And as part of the arrangement Jones agreed to act as an incorporator, and as vice-president and director after organization.

The corporation was organized a few months later, with Boardman as president and Jones as vice-president and director according to arrangement, and, in addition, as secretary; and Boardman formally turned over the patent rights to it for 1498 shares of the common stock of a total par value of $149,800, out of an authorized total of 1500 shares of an aggregate par value of $150,000. When the stock was issued, Boardman and Jones, as officers, issued a certificate for 150 shares of it, of a par value of $15,000, to Jones, in accordance with the contract.

Of the payments to be made "from fifty (50%) per cent. of the first cash received from the sale of securities of said corporation," Jones later received a total of $6,000 in installments, paid, as he says, as Boardman "sold the stock." This was not all paid in cash; because of Boardman's need of the money, $1,000 was paid in preferred stock of the corporation and $1,000 in a Liberty bond. The remainder was paid in money. There were still unpaid $4,000 of the $10,000 to be paid from the sale of securities. Boardman has since died, and in a proceeding to subject his real estate to the payment of his debts, Jones has filed a claim as creditor of Boardman personally for the $4,000; and that claim has been disallowed on exceptions of other creditors, because it does not appear that any more of the stock received by Boardman for the patent rights has been, or could have been, sold and converted into money for further payments. Jones appeals from this disallowance of his claim.

Testimony taken in the lower court showed statements by Boardman before his death that there was a balance due from him to Jones, on account of the purchase of the bunch builder, of $4,000, and, again, that he still owed Jones more of the whole $10,000. There was testimony, too, that, under

a special authorization of the directors, preferred stock of the corporation was sold by Boardman, on commission; that shares to a total par value of $130,000 or more were thus sold by him, and that his commission amounted to about $20,000.

The question to be decided, then, is whether Jones was relegated to the money to be received from the sale of the common stock in Boardman's hands for payment of the $10,000 in money, or the remainder of it unpaid, or whether Boardman was personally liable to pay it, either from his commissions from the sale of preferred stock or otherwise.

There is no obscurity in the arrangement which the parties decided upon for themselves in the contract, and nothing invalid about it. Their agreement was that, on the formation of the projected corporation, the $10,000 in money should be paid from cash received from the sale of securities, and, deferring for the moment any discussion as to the meaning of the words, that is now the sole source from which the appellant may claim payment. Such a designation of the source of payment is regularly subject to the qualification that if the person who is to pay from that source is shown to have defeated the arrangement (*Rumsey v. Livers,* 112 Md. 546, 553), he may be held personally liable for the debt; but nothing of the sort has been shown by the appellant here. The contract arrangement, on the facts before us in this record, is in full force and effect. The claimant chose to commit $10,000 of the valuation placed on the patent for the transaction to the chance of success in selling securities of the exploiting corporation, and the court cannot, of course, substitute and enforce another arrangement for him. Payment is made dependent upon a condition precedent, and recovery could be had only upon fulfillment of the condition, or defeat of it by the party in control of the source of payment. *Rumsey v. Livers, supra,* 552; *Pistel v. Imperial Ins. Co.,* 88 Md. 552, 562; *Ordeman v. Lawson,* 49 Md. 135, 158; *Cline v. Miller,* 8 Md. 274, 282; 2 *Williston, Contracts,* sec. 675. In *Rumsey v. Livers, supra,* 552, this Court, deal-

ing with an undertaking by a principal contractor to pay a
subcontractor as and when the principal contractor received
payments from the owner, said: "But as the agreement con-
tained the unusual provision that the debt should be due
when payments were received by the defendants under the
principal contract, it was essential to the plaintiff's recovery
that he should aver and prove not only the existence of the
debt, but also that it had become payable either on account
of the actual receipt by the defendants of the sums due them
from the company or as a result of such conduct on the part
of the defendants as would preclude them from relying upon
the provisions suspending the maturity of the plaintiff's
claim." And even when the defendant stands in the posi-
tion of agent for the plaintiff to receive money or property
on his account, the principal must prove the receipt of the
money or property before he can require an accounting by
the agent or recover against him personally. 1 *Mechem,
Agency*, sec. 1344; *Harr v. Rome*, 28 App. D. C. 214.

For determining the meaning of the reference for pay-
ment to the cash received from the sale of corporate securi-
ties, we have some possible meanings eliminated at the out-
set. Under their arrangement in organizing the corporation,
the parties had obtained from it full consideration for the
patent rights to be exploited, in the 1498 shares of the com-
mon stock. They transferred the rights for that stock, and
duly issued the stock to Boardman in full payment. There-
fore, the corporation cannot be looked to for any further
payment for the patents, and the appellant cannot demand
payment out of any money which might come to it from
other subscriptions to its stock, that is, to the preferred stock,
which remained after payment for the patent. And as it
does not appear from this record that Boardman received
any preferred stock which might under arrangement with
Jones be looked to as an additional source of payment, it
would seem to be from the sale of the common stock issued
in payment of the patent rights that the appellant's money
is to come—unless, indeed, the money which it is testified

Boardman received as commissions on the sale of the preferred stock may also be treated as within the meaning of "cash received from the sale of securities of said corporation." According to the direct, ordinary meaning of the words, however, "cash received from the sale of securities" would be the cash proceeds of sale, and not commissions earned by selling the securities. And at the time of the making of this contract Boardman had no right to commissions. The board of directors which later authorized 'the commissions, and fixed the rate, was, of course, not then in existence. For these reasons the intention of the parties when making that contract would seem, as far as this record goes, rather to have been that the money payments for the patent rights were to come to Jones only from the proceeds of sale of the common stock distributed to Boardman in consideration of their transfer to the corporation. Our conclusion is, then, that the construction placed upon the contract by the court below was correct on the evidence before it.

As to the reported statements of Boardman that "there was a balance due from him to Mr. Jones on account of the purchase of the bunch builder," and "that he still owed him some more," our conclusion is that these fragmentary statements were not alone sufficient to justify the court's finding in the present record that there was any undertaking other than that set forth in the contract, which appears to have been the whole actual basis of the relation between the two parties, and that, therefore, they must be taken to refer to the conditional obligation already discussed, and to add nothing to the appellant's rights under it.

This Court is impressed with the fact that, in the proceedings below, the parties took no evidence on sales of securities from which payments might be made to Jones, and made little or no reference to that source to which, as we find, payments were restricted. It may be that the facts were fully known to the claimant, and there was no controversy on that element. But we have concluded that before finally disposing of the claim, the court below should give the

claimant an opportunity to open the inquiry and adduce proof, if he elects to do so, on the disposition by Boardman or his representatives of securities which he held, as a possible source of payment to Jones under the arrangement between the two of them. With this end in view, we will remand the case without affirming or reversing the order.

> *Case remanded, without affirming or reversing the order, to the end that further proceedings may be had in accordance with this opinion, if the appellant so elects; costs to be paid by the appellant.*